IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Lisa Y. Henderson, *Regional Director of the Tenth Region, Eleventh Subregion of the National Labor Relations Board*, for and on behalf of *the* National Labor Relations Board,<br><br>    Petitioner,<br><br>  v.<br><br>Starbucks Corporation,<br><br>    Respondent. | Case No. 8:23-cv-06198-JDA<br><br>**OPINION AND ORDER** |

This matter is before the Court on Petitioner's motion to quash Respondent's subpoenas duces tecum and ad testificandum served on non-party witnesses. [Doc. 57.] Respondent responded to Petitioner's motion [Doc. 65], and Petitioner replied [Doc. 67]. At the direction of the Court [*see* Doc. 88], the parties also submitted supplemental briefing on the issue of standing [Docs. 91; 92]. Therefore, this matter is ripe for ruling.

## BACKGROUND

This action involves Petitioner's request for injunctive relief under Section 10(j) of the National Labor Relations Act (the "Act"). [Doc. 1.] Section 10(j) of the Act permits the National Labor Relations Board (the "Board"), upon its issuance of an administrative complaint on a charge alleging an unfair labor practice, to petition a United States district court for injunctive relief pending a final decision by the Board. *See* 29 U.S.C. § 160(j). Petitioner sought to resolve this action solely on the administrative record related to the unfair labor practice action [*see* Doc. 1], but on January 29, 2024, the Court granted

Respondent's motion for expedited discovery in part, allowing some additional limited discovery [Doc. 30].  At the Court's direction, the parties each submitted proposed discovery plans [Docs. 35; 36], and the Court adopted in part Petitioner's proposed discovery plan (the "Discovery Plan"), revising several of the proposed discovery deadlines [Docs. 42; 59].[1]  The Discovery Plan limits the scope and amount of written discovery and depositions that may be taken, consistent with the Court's specific rulings in allowing limited discovery.  [*See* Doc. 59.]

At issue here are subpoenas duces tecum and ad testificandum served by Respondent on 14 current and former employees of Respondent who were suspended and/or discharged after engaging in protests over working conditions and changes to terms and conditions of employment.[2]  [Docs. 57-2–57-15.]  The subpoenas seek

---

[1] This case was reassigned the undersigned on February 14 [Doc. 33], 2024, after the Court directed the parties to submit proposed discovery plans but before the parties submitted their proposed discovery plans.  Petitioner's original proposed discovery plan was filed on February 20, 2024.  [Doc. 35.]  The Court adopted in part this discovery plan on February 27, 2024.  [Doc. 42.]  On March 8, 2024, Petitioner moved to correct a scrivener's error in her discovery plan [Doc. 52], which the Court granted [Doc. 54]. Petitioner then filed the corrected discovery plan on March 15, 2024.  [Doc. 59.]

[2] The subpoenas at issue are not identical.  The subpoenas issued to the employees who were terminated (the "Discharged Employees") include some additional requests, and the requests are not listed in the same order as the subpoenas to the other employees (the "Non-Discharged Employees").  [*Compare* Docs. 57-2; 57-6–7; 57-12; 57-14 *with* Docs. 57-3–5; 57-8–11; 57-15.]  The Discharged Employees include Aneil Tripathi, Jon Hudson, Kadence Britt, Rhi Greer, and Sarah Mobley.  [Docs. 1 ¶ 8(m); 57 at 14; 92 at 2.]  The Non-Discharged Employees include Skylar Blume, Paul Cobb, Virgil Dowis, Emma Fretwell, Natalie Mann, Ashley Melendez, Mya Ourada, and Braden Terrill.  [Docs. 1 ¶ 8(k); 92 at 2.]  Further, the subpoena to Ryan Welton, a shift supervisor for Respondent (the "Welton subpoena"), is different from the subpoenas to the Discharged Employees and the Suspended Employees.  [Docs. 57-13; 1-17 at 40 (1081:7–25).]

information and documents regarding employee communications about Workers United ("the Union"). [*Id.*] Petitioner asks this Court to quash these subpoenas on the grounds that they seek protected material outside the scope of the Discovery Plan, seek material from witnesses concerning issues they already testified about during the unfair labor practice hearing, impose undue burdens on third parties, and demand production of duplicative or irrelevant material. [Doc. 57.] Respondent argues as a threshold issue that Petitioner lacks standing to move to quash non-party subpoenas. [Doc. 65 at 3–9.] Petitioner, on the other hand, contends that she has standing because the Discovery Plan submitted by Petitioner and adopted in part by the Court states that "Petitioner and non-parties will have standing to object to any subpoena issued to non-parties," and because Petitioner, as a representative of a governmental agency, has a duty to protect the employees' "privacy interest" in their personal sentiments regarding union representation. [Docs. 57 at 2–6; 91 at 3–5 (internal quotation marks omitted).]

## **APPLICABLE LAW**

Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 26 provides that "[o]n motion or on its own, the court must limit the frequency or extent of discovery . . . if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . [or] is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Rule 45 of the Federal Rules of Civil Procedure governs the procedures for issuing and quashing subpoenas in civil actions. A person subject to a subpoena may move to

3

quash a subpoena pursuant to Rule 45(d)(3)(A). That subsection provides that a court must quash or modify a subpoena that:

(i)  fails to allow a reasonable time to comply;

(ii)  requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii)  requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv)  subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A).

A party to an action ordinarily is without standing, however, to move to quash a subpoena issued to a non-party absent some personal right or privilege. 9A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2459 (3d ed. 2009), *cited with approval in In re Grand Jury Subpoena John Doe*, No. 05GJ1318, 584 F.3d 175, 184 n.14 (4th Cir. 2009); *see also HDSherer LLC v. Nat. Molecular Testing Corp.*, 292 F.R.D. 305, 307 (D.S.C. 2013).

## **DISCUSSION**

Based on the record, the Court finds that Petitioner is without standing to move to quash the subpoenas directed to the non-party employees. Regardless of whether standing may be conferred by the Discovery Plan, Petitioner must still demonstrate that she has "some personal right or privilege in the information sought by the subpoena." *See HDSherer LLC*, 292 F.R.D. at 307 (internal quotation marks omitted). Petitioner argues that she generally has duty to protect employees' "privacy interest" because the employees have a right to privacy in their personal sentiments regarding union

4

representation, but she does not identify any *independent* privacy interest she has in the documents requested by the subpoenas.

Instead, Petitioner claims that because she is the Regional Director of a government agency, she has standing to move to quash subpoenas to nonparties based on the agency's special relationship or duty to the third-party, and that this "congressional mandate" creates a different interest than the personal rights test described in the District of South Carolina case law cited by Respondent. [Doc. 91 at 4–5.] For the first time in her supplemental briefing, Petitioner cites four cases in which courts "considering similar motions to quash from other federal agencies"[3] apparently "have recognized that those agencies have standing to move to quash subpoenas issued to non-parties given the agency has a special relationship or duty to third-party." [*Id*. at 4.] The Court finds these cases inapplicable, as they either involve a specific privilege assertion or the unique ability of the Equal Employment Opportunity Commission ("EEOC") to step into the shoes of the employee it represents.[4] Petitioner has not asserted any specific privilege claim here,

---

[3] Petitioner does not cite—nor has this Court found—any cases on this issue involving the Board specifically.

[4] *See Perez v. Sunshine Motel Inn, LLC*, No. 1:15-cv-3197-RMP, 2016 WL 10587198, at *2 (E.D. Wash. Sept. 12, 2016) (holding that the Department of Labor had standing to object to a non-party subpoena because it properly asserted the government informant's privilege); *see also EEOC v. Bojangles' Rests., Inc.*, No. 5:16-cv-654-BO, 2017 WL 2889493, at *3 (E.D.N.C. July 16, 2017) (holding that the EEOC had standing to seek to quash a subpoena to a non-party for employee personnel records because "the EEOC stands in the shoes of the employee on whose behalf it brings suit"); *EEOC v. Unit Drilling Co.*, No. 13-cv-147-TCK-PJC, 2014 WL 130551, at *3 (N.D. Okla. Jan. 13, 2014) (same, and acknowledging that courts are split on the issue of whether EEOC has standing to object on behalf of claimants); *EEOC v. Serramonte*, 237 F.R.D. 220, 223 (N.D. Cal. 2006) (providing no reasoning for granting the motion to quash, but citing to Rule 45(d)(3)(A)(iii) (formerly 45(c)(3)(A)(iii)), which provides a court may quash a subpoena that requires "disclosure of privileged or other protected matter").

nor does she step into the shoes of the employees in the same way as the EEOC. *See Henke v. NLRB,* No. 98-5300, 1999 WL 486629, at *2 (6th Cir. June 29, 1999) (rejecting an argument that "the goal of the [Act] is . . . the vindication of private rights" and holding that "[t]his is clearly not so" because "[t]he Board acts on behalf of the public and seeks enforcement of the [Act] as a public agent"); *Henderson ex rel. NLRB v. Int'l Union of Operating Eng'rs, Local 701*, 420 F.2d 802, 808 (9th Cir. 1969) (holding that the NLRB acts in the public interest, "not on behalf of . . . either union"); *see also Blyer ex rel. NLRB v. Domsey Trading Corp.*, No. 91 CV 1304, 1991 WL 148513, at *2 (E.D.N.Y. Jul. 30, 1991) (same).

Further, to the extent Petitioner argues there is a broad exception for government entities in moving to quash non-party subpoenas, the Court likewise finds this unconvincing. *See MC Trilogy Tx., LLC v. City of Heath*, No. 3:22-cv-2154-D, 2023 WL 5918925, at *10 (N.D. Tex. Sept. 11, 2023) (holding that the government's "blanket assertion" of a personal privilege in the documents requested was "insufficient to confer standing to move to quash a non-party subpoena"); *Sec'y of Labor, U.S. Dep't of Labor v. Kazu Constr., LLC*, No. 16-00077-ACK-KSC, 2017 WL 628455, at *11 (D. Haw. Feb. 15, 2017) (holding that the Department of Labor lacked standing to seek to quash non-party subpoenas because "he [did] not have a personal right or privilege in the documents sought" because "the identities of [government informants who were subpoenaed were] known"); *see also U.S. v. Bank*, No. 2:17cr126, 2019 WL 1510324, at *2 n.2 (E.D. Va. Apr. 5, 2019) (holding that "[c]ourts within the Fourth Circuit generally find that the government does not have standing to challenge a third-party subpoena in a criminal matter unless it has a legitimate interest in the materials requested").

6

Because Petitioner has failed to demonstrate any personal right or privilege with regard to the documents requested in the subpoenas, Petitioner's motion to quash is denied for lack of standing.

Nevertheless, notwithstanding Petitioner's lack of standing, the Court, exercising its inherent authority to limit discovery pursuant to Rule 26(b)(2)(C) of the Federal Rules of Civil Procedure, and in the interest of promoting judicial economy and the just, speedy, and inexpensive determination of this action, shall order compliance with the subpoenas *with modifications*.  The Court notes the following issues with the subpoena requests that may need to be modified to conform with the Discovery Plan, and orders that the parties meet and confer to resolve these issues:

1.     Respondent asserts in its response to Petitioner's motion to quash and in its supplemental briefing that it has already received responses to several of the subpoenas.  [Docs. 65 at 7 n.3; 92 at 7–8.]  If Petitioner acknowledges this to be true, the Court directs Respondent to notify the Court as to which subpoenas are no longer at issue.  Further, if any depositions of the non-parties have already been taken, the Court directs Respondent to notify the Court that those subpoenas are no longer at issue.

2.     Petitioner argues that, pursuant to the Discovery Plan, there should be an explicit limitation in the subpoenas' definitions and instructions providing that the subpoena recipients do not have to produce documents related to issues about which they have already testified.  [Doc. 57 at 8, 14–15.]  If the parties can agree to this, the Court directs Respondent to revise the subpoenas to include such limitation.  Specifically, this issue is apparent in Request Nos. 1(e) and 2 in the Discharged Employees'

7

subpoenas; Request No. 2 in the Suspended Employees' subpoenas; and Request No. 2 in the Welton subpoena.

3. Petitioner argues that communications to or from the Board, as requested in Request No. 1 in each of the subpoenas, are duplicative of requests already sent to Petitioner. [*Id*. at 10–11.] Respondent argues that the subpoena recipients may have responsive materials that have not yet been produced by the Board. [Doc. 65 at 11.] The Court is inclined to agree with Respondent but urges the parties to reach an agreement on this issue.

4. Petitioner argues in her motion to quash that the definitions and instructions in the subpoenas are conflicting and, in effect, prohibit the subpoena recipients from redacting in their document production the names of the other employees who have not already testified at the administrative hearing. [Doc. 57 at 8–9.] Respondent contends that these definitions and instructions do not conflict and concedes that the subpoena recipients may redact from their document productions the names of any employees who have not already testified. [Doc. 65 at 9–10.] If Petitioner agrees that this will adequately protect the rights of the employees under Section 7 of the Act, the Court directs Respondent to revise the definitions and instructions of the subpoenas to resolve any apparent conflict. If Petitioner believes that all employee names must be redacted, including those of employees who have already testified, and Respondent agrees to this, the Court directs Respondent to revise the definitions and instructions of the subpoenas to include this additional instruction. It appears from Petitioner's motion to quash that resolution of this issue may resolve Petitioner's objections to many of the subpoenas' requests.

5.      Based on the parties' briefing and the record available before it, the Court is inclined to narrow the timeframe in several of the subpoena requests to begin August 6, 2022, rather than May 31, 2022. Specifically, in Request Nos. 1(a), 4, 5, and 7 in the Suspended Employees' subpoenas; Request Nos. 1(a), 4, and 5 in the Discharged Employees' subpoenas; and Request Nos. 1(a), 3, and 5 in the Welton subpoena, the relevant timeframe requested begins May 31, 2022. Absent a sufficient showing that May 31, 2022, is a relevant start date, the Court urges Respondent to narrow these requests to a timeframe beginning August 6, 2022.

6.      Petitioner argues that Request No. 6 in the Discharged Employees' subpoenas conflicts with the Discovery Plan because the Discovery Plan excludes discovery of discharged discriminatees' interest in returning to work. [Doc. 57 at 19.] The Court disagrees and finds that the Discovery Plan prohibits only written discovery requests on this topic. [Doc. 59 at 2–3.] The Court urges the parties to resolve any remaining issues surrounding this Request.

7.      The Court urges the parties to compromise on ways to narrow Request Nos. 1(b) and 3 in each of the subpoenas. These requests appear duplicative, and the Court is inclined to agree with Petitioner that imaging each subpoena recipient's cell phone is unduly burdensome.

The Court is of the firm opinion that the parties in this case are capable of collaborating to appropriately narrow the subpoena requests pursuant to both this Order and the Discovery Plan without further Court intervention. The Court therefore orders

9

the parties to meet and confer regarding these requests and submit revised copies of the subpoenas for the Court's review and consideration.

## **CONCLUSION**

In light of the above, Petitioner's motion to quash [Doc. 57] is DENIED and the Court hereby ORDERS the parties to meet and confer by July 1, 2024, regarding narrowing the subpoena requests as outlined by the Court above. Additionally, on or before July 8, 2024, the parties shall submit a joint status report advising whether these issues have been resolved, and if so, providing revised copies of the subpoenas for the Court's review.

IT IS SO ORDERED.

s/ Jacquelyn D. Austin
United States District Judge

June 17, 2024
Greenville, South Carolina